IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Derrick Bass,                                                     Case No. 3:14CV109

               Plaintiff

        v.                                                        **ORDER**

Carolyn Colvin,
  Acting Commissioner of Social Security,

               Defendant

This is a Social Security case in which the plaintiff appeals the Commissioner's decision denying his application for benefits.

Before me is the Magistrate Judge's Report and Recommendation (R&R), which found that a remand is required because the administrative law judge (ALJ) misapplied the treating-physician rule. (Doc. 18). Specifically, the Magistrate ruled the ALJ did not give good reasons for discounting the opinion of Dr. Barbara LaForrest, plaintiff's treating psychologist.

The Commissioner has filed an objection. (Doc. 19).

For the following reasons, I overrule the Commissioner's objection, adopt the R&R as the order of this court, and remand this case for further proceedings.

**Background**

In 2008, plaintiff Derrick Bass applied for Social Security benefits, alleging his schizoaffective disorder disabled him from obtaining gainful employment.

## A. Evidence of Mental Impairments

Bass began seeing Dr. LaForrest in November, 2008, at the Zepf Center in Toledo, Ohio. He reported having had auditory hallucinations for the past nine years; during some of those hallucinations Bass heard voices telling him to harm other people.

Dr. LaForrest opined that Bass was depressed, isolated, and suspicious of others. She diagnosed him with schizoaffective disorder, adjusted his regimen of psychotropic medications, and assigned him a global assessment of functioning (GAF) score of 53, which indicated he had "moderate symptoms." (Doc. 18 at 7).

During a visit to the Zepf Center some two weeks later, Bass reported his medication was working, though he still heard voices and had difficulty sleeping for more than fifteen or twenty minutes at a time.

When Bass saw Dr. LaForrest again in September, 2009, he reported auditory hallucinations (though no hallucinations commanding him to harm others). The doctor recommended switching to a new medication, Seroquel, to help with the hallucinations. However, when Bass visited Dr. LaForrest the next month, he reported that the Seroquel had not helped with his hallucinations.

In February, 2010, Bass told Dr. LaForrest that he still experienced auditory hallucinations and "had not yet had much improvement." (*Id.* at 8). The record reflects that Bass's condition did not improve from February to June, 2010: he continued to experience auditory hallucinations, difficulty sleeping, and appetite problems. Bass reported auditory hallucinations through January, 2011, though he believed that a new medication had somewhat controlled the hallucinations.

In May, 2011, Dr. LaForrest prepared a Multiple Impairment Questionnaire and a narrative statement regarding Bass's functional abilities.

In the former document, LaForrest stated that, while Bass's medication regimen had been somewhat helpful, Bass continued to experience auditory hallucinations. In the latter, she opined that Bass was "quite depressed," and that "his symptoms seem to worsen under stress and pressure," causing him to "become[ ] more suspicious of people[.]" (Tr. 346). Dr. LaForrest, "d[id] not see that his condition will improve very much from what it is now." (*Id.*).

Despite further adjustments to his regimen of psychotropic drugs, Bass reported auditory hallucinations in October and December, 2011, and in July and November, 2012.

In a Psychiatric/Psychological Impairment Questionnaire she prepared on November 12, 2012, Dr. LaForrest opined that, despite taking "multiple psychiatric meds since 2008," Bass "still has depression, mood swings, and auditory hallucinations." (*Id.* at 365). LaForrest also noted that, while Bass had improved somewhat, his symptoms "worsened under stress and pressure." (*Id.*).

In light of Bass's treatment history and continuing symptoms, Dr. LaForrest opined that:

> [Bass] was moderately limited in his ability to understand and remember detailed instructions, sustain ordinary routine without supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior. [There were also] marked limitations in Bass's ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; make simple work-related decisions; complete a normal workweek without interruptions from psychologically-based symptoms; perform at a consistent pace; and respond appropriately to change in the work setting.

(Doc. 18 at 13-14).

### B. The ALJ's Decision

Although the ALJ determined Bass suffered from a severe impairment (schizoaffective disorder), she concluded Bass had the residual functional capacity "to perform a full range of work at all exertional levels" limited to work: 1) "with an SVP of Level 1 to 2, where the pace of productivity is not dictated by an external source"; 2) that required only occasional contact with the public; and 3) was repetitive with few changes on a day-to-day basis. (Tr. 25).

The ALJ reached that conclusion after giving "reduced weight" to the opinions Dr. LaForrest expressed in her November, 2012, psychological questionnaire. (*Id.* at 30).

First, the ALJ determined that the mental limitations Dr. LaForrest assigned were "completely inconsistent" with a contemporaneous treatment note reflecting that Bass's condition was "relatively benign."[1] (*Id.*). In that note, which a nurse prepared in December, 2012, the nurse had reported that Bass's mood was "euthymic" (i.e., he was not depressed), his concentration was "okay," and his sleep patterns had improved. (*Id.*). The nurse had also remarked that Bass was coping with his auditory hallucinations.

Second, the ALJ, relying heavily on Bass's only slightly improved GAF scores during the course of treatment with Dr. LaForrest, concluded Bass had made "significant improvement." (*Id.*). The ALJ therefore reasoned that Dr. LaForrest's opinion, which did not appear to account for this improvement, was not probative.

For these reasons, the ALJ rejected the moderate and marked mental limitations Dr. LaForrest assigned and found that Bass was not disabled.

### C. The R&R

---

[1] This was the ALJ's characterization of Bass's condition, not Dr. LaForrest's or any other medical professional's.

Magistrate Judge McHargh concluded the ALJ failed to give good reasons for rejecting Dr. LaForrest's opinion.

In a portion of the R&R to which the Commissioner has not objected, the Magistrate Judge found the ALJ "was more influenced by Plaintiff's GAF scores than she was entitled to be." (Doc. 18 at 18). Citing a number of cases "recogniz[ing] that the usefulness of GAF scores" in assessing an individual's functional capacity "is now dubious," the Magistrate ruled "the ALJ's significant reliance on GAF scores to formulate the RFC was a critical flaw in the disability determination that requires remand." (*Id.* at 20).

The Magistrate Judge also concluded there was no substantial evidence for the ALJ's determination that Dr. LaForrest's opinion was inconsistent with Bass's treatment records.

First, the Magistrate found the ALJ did not explain, let alone adequately, how Bass's "relatively benign" condition was inconsistent with the mental limitations Dr. LaForrest assigned.

Second, the Magistrate Judge ruled there was no basis for the ALJ's finding that, in light of Bass's supposed progress during treatment, "Dr. LaForrest's opinions should have changed between May 2011 and November 2012." (*Id.* at 21).

For one thing, the Magistrate noted the treatment records "do not demonstrate a substantial shift in Plaintiff's symptoms or mental health impairment." (*Id.* at 22).

For another, the Magistrate Judge found it "difficult to compare the three opinion statements Dr. LaForrest authored." (*Id.*). The first two statements either "involved questions about physical limitations, rather than mental impairments" or "provided little detail about work-related abilities." (*Id.*). In contrast, the third "specifically discussed many work-related mental limitations." (*Id.*).

5

Because the three reports "had only a small amount of substantive overlap . . . comparing them does not strongly indicate that [LaForrest's] findings ought to have been doubted." (*Id.*).

The Magistrate Judge therefore recommended a remand so that the ALJ can "reassess the psychologist's opinions, while considering the factors set out in [20 C.F.R. §§ 416.927 and 404.1527], and provide specific good reasons in support of her treating source finding." (*Id.* at 23).

## Analysis

In Social Security cases, the Commissioner determines whether a claimant is disabled and entitled to benefits. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). My review "is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id.*

The Commissioner objects that the record reasonably supports the ALJ's determination that the mental limitations Dr. LaForrest assigned in her November, 2012, psychological questionnaire were inconsistent with Bass's treatment records.

In light of this objection, I will conduct a de novo review of the Magistrate Judge's determination that the ALJ misapplied the treating-physician rule. 28 U.S.C. § 636(b)(1).

### A. The Treating-Physician Rule

"Under the treating physician rule, an ALJ generally must give greater deference to the opinions of treating physicians than those of other physicians." *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 818 (N.D. Ohio 2009).

"Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques;

and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

If the ALJ decides to discount the treating-physician's opinion, she must give "good reasons" for doing so. Social Security Ruling 96-2p, 1996 WL 374188, *5. These reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion." *Blakely*, *supra*, 581 F.3d at 406-07.

### B. The ALJ Misapplied the Treating-Physician Rule

Contrary to the Commissioner's objection, the ALJ failed to give good reasons for her finding that Dr. LaForrest's opinion was inconsistent with other evidence in the record.

Most importantly, the Commissioner has not addressed the Magistrate Judge's ruling that the ALJ failed to explain why LaForrest's clinical findings were "relatively benign," let alone how those findings were inconsistent with her opinion regarding Bass's work-related mental limitations.

As the Magistrate Judge rightly noted, Bass experienced "auditory hallucinations, sleep and mood disturbance, depression, and mood swings" throughout his four years of treatment with Dr. LaForrest. (Doc. 18 at 21). Dr. LaForrest's treatment notes, and the psychological questionnaire she prepared in November, 2012, demonstrate unequivocally that these symptoms were constants in Bass's life, though they waxed and waned in severity.

Nevertheless, the ALJ homed in on a single piece of evidence – a nurse-practitioner's progress note from December, 2012, reflecting Bass was coping with (ongoing) auditory hallucinations, not depressed, and sleeping "OK" – to conclude Bass's condition was "benign." (Tr. 382).

7

Given the wealth of evidence supporting suggesting Bass's condition was hardly "benign," this was not a good reason to discount Dr. LaForrest's opinion. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014) (ALJ must evaluate record as a whole to determine whether applicant is entitled to benefits).

Moreover, even accepting the ALJ's lay opinion that Bass's condition was "relatively benign" in December, 2012, that does not necessarily conflict with LaForrest's opinion imposing moderate and marked limitations.

For example, while Dr. LaForrest had noted that Bass could cope with his hallucinations, she also emphasized that his hallucinations "become worse under stress and pressure." (Tr. 384). Moreover, despite a steady regimen of psychotropic medications, Bass "still gets suspicious of others." (*Id.*). This undisputed evidence, which is consistent with the type and severity of Bass's symptoms over the entire course of his treatment, would support her opinions on Bass's moderately and marked ability to work. *Cf. Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]").

In sum: the ALJ focused on a single piece of evidence while ignoring much, and much more, probative evidence in disregarding Dr. LaForrest's opinions. Moreover, the ALJ failed to explain why Bass's condition was "relatively benign," and how that condition was inconsistent with the limitations LaForrest assigned.

Accordingly, I concur in the Magistrate Judge's finding the ALJ failed to give good reasons for discounting Dr. LaForrest's opinion.

## Conclusion

It is, therefore,

ORDERED THAT

1. The Commissioner's objection (Doc. 19) be, and the same hereby is overruled;

2. The Magistrate Judge's R&R (Doc. 18) be, and the same hereby is adopted as the order of this court; and

3. The Commissioner's decision denying Bass's application for benefits be, and the same hereby is vacated. The case is remanded for further proceedings, at which the ALJ must (a) reassess Dr. LaForrest's opinion and (b) reconsider Bass's mental residual functional capacity after giving appropriate weight to his GAF scores.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge