**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Derrick Bass,                                                        Case No. 3:14CV109

            Plaintiff

            v.                                                         **ORDER**

Carolyn W. Colvin,
 Acting Commissioner of Social Security,

            Defendant

       This is a Social Security case in which the plaintiff, Derrick Bass, successfully appealed from the Commissioner's decision denying his application for benefits. *Bass v. Colvin*, 2015 WL 1299266 (N.D. Ohio).

       Pending is Bass's motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. (Doc. 23). The Commissioner, who contends she took a substantially justified position in this litigation, opposes the motion. (Doc. 25).

       For the following reasons, I conclude the Commissioner's position was not substantially justified, and that Bass's lawyer is entitled to compensation at the requested rate of $187.04 per hour.

**Background**

       Bass sought Social Security benefits in 2008, on the ground that a schizoactive disorder disabled him from obtaining gainful employment.

## A. The ALJ's Decision

In February, 2013, an administrative law judge denied Bass's application.

The ALJ concluded Bass had the residual functional capacity (RFC) to perform a full range of work, provided that the work: 1) had a Standard Vocational Pace of Level 1 or 2; 2) required only occasional contact with the public; and 3) was repetitive. *Bass*, *supra*, 2015 WL 1299266, at *2, *13.

In so concluding, the ALJ gave only "reduced weight" to the opinions of Bass's treating psychologist, Dr. Barbara LaForrest.

After treating Bass for four years, Dr. LaForrest had opined that, despite taking "multiple psychiatric meds since 2008," Bass "still has depression, mood swings, and auditory hallucinations." (Tr. 365).[1] She had also concluded that, though Bass's condition had improved somewhat, Bass remained "quite symptomatic," and his symptoms tended to "worsen under stress and pressure." (*Id.* at 346, 365).

Dr. LaForrest therefore assigned Bass moderate and marked mental limitations. *Bass*, *supra*, 2015 WL 1299266, at *2, *12.

Nevertheless, the ALJ concluded LaForrest's treatment records "do not fully support the limitations expressed in her opinions." (Tr. 30).

First, the ALJ determined "the clinical findings noted [in LaForrest's records] are relatively benign[.]" (*Id.*). Here the ALJ pointed to a single treatment note, which a nurse prepared in December, 2012, reflecting Bass's mood was "euthymic," his concentration was "okay," and his sleep patterns had improved. (*Id.*). In the ALJ's view, that description of Bass's condition was "completely inconsistent with the limitations expressed by Dr. LaForrest." (*Id.*).

---

[1] "Tr. _" indicates a citation to the administrative record.

2

Second, the ALJ found LaForrest's opinion incredible because it was inconsistent with what the ALJ perceived to be Bass's "improvement with treatment and medication" from May, 2011, to November, 2012. (*Id.*).

Third, the ALJ gave "significant weight" to Bass's Global Assessment of Functioning (GAF) scores, which had modestly improved during his treatment with Dr. LaForrest. (*Id.*). Because Bass's most recent GAF score "evidence[d] only moderate symptoms," it was not "congruent with the limitations [LaForrest] expressed." (*Id.*).

### B. Bass's Appeal

Bass appealed from the Commissioner's decision, claiming the ALJ: 1) misapplied the treating-source rule in discounting Dr. LaForrest's opinions; 2) did not accord the proper weight to the opinions of Bass's treating physician; 3) improperly evaluated Bass's credibility; and 4) failed to comply with SSR 96-8p, a regulation governing how ALJs should articulate their RFC determinations.

Magistrate Judge McHargh rejected Bass's second, third, and fourth arguments, but accepted his claim the ALJ violated the treating-source rule by according only reduced weight to Dr. LaForrest's opinion.

The Magistrate Judge first ruled the ALJ was "more influenced by Plaintiff's GAF scores than she was entitled to be." *Bass*, *supra*, 2015 WL 1299266, at *15.

He explained "a GAF score may help an ALJ assess mental RFC, but it is not raw medical data." *Id.* "Courts have recognized that the usefulness of GAF scores is now dubious," the Magistrate Judge continued, "particularly when compared to the deference generally granted to a treating source's opinions." *Id.*

3

The Magistrate Judge then found that, notwithstanding a line of precedent advising ALJs "to significantly temper their reliance on GAF scores, given their limited utility," the ALJ gave "significant weight" to Bass's scores. *Id.*, at *16. It appeared to the Magistrate Judge that "the ALJ granted the greatest weight to Plaintiff's GAF scores when formulating the mental RFC over all other evidence." *Id.*

That, the Magistrate Judge emphasized, "was a critical flaw in the disability determination that requires remand." *Id.*

The Magistrate Judge then explained, in detail, how the ALJ had violated the treating-source rule. *Id.*, at *16-*18.

In brief, the Magistrate Judge found: 1) the ALJ never explained – let alone adequately – how Bass's condition was "relatively benign," or how Bass's supposedly benign condition was inconsistent with the mental limitations Dr. LaForrest had assigned; and 2) the medical evidence did not support the ALJ's conclusion LaForrest should have recognized a positive change in Bass's condition between May, 2011, and November, 2012.

Accordingly, the Magistrate Judge recommended vacating the Commissioner's decision and remanding for further proceedings.

The Commissioner objected to the R&R, but I overruled her objection and adopted the R&R in its entirety.

In opposing the Magistrate Judge's recommendation, the Commissioner contended that, whatever other errors the ALJ may have committed, the fact that Dr. LaForrest's "November 2012 assessment [of Bass] was inconsistent with her contemporaneous benign examination findings [ ] independently justified [the ALJ's] decision to discount Dr. LaForrest's opinions[.]" (Doc. 19 at 2).

4

I concluded this objection was meritless, not least because it failed to address a key component of the R&R: the ALJ's failure to explain how the "benign examination findings" in fact conflicted with the marked and moderate limitations Dr. LaForrest assigned. *Bass*, *supra*, 2015 WL 1299266, at *4.

Such an explanation was necessary because, as the Magistrate Judge found, *id.*, at *16, and I reiterated, LaForrest's "treatment notes, and the psychological report she prepared in November, 2012, demonstrate[d] unequivocally that [Bass's] symptoms" – auditory hallucinations, sleep and mood disturbances, and depression – were constants in Bass's life, though they waxed and waned in severity." *Id.*, at *4.

But rather than discuss the abundant evidence supporting Dr. LaForrest's opinions, the ALJ – and the Commissioner – "homed in on a single piece of evidence" as grounds for rejecting Dr. LaForrest's opinions, and "ignor[ed] much, and much more, probative evidence" supporting those opinions. *Id.*, at *5.

Nor did the Commissioner explain why the ALJ's layman's interpretation of a single treatment note should trump LaForrest's opinion. *Id.*

Notably, while the Commissioner's merits brief had urged the Magistrate Judge to consider Bass's GAF scores and his supposed improvement during treatment as grounds to affirm the denial of benefits, her objection was agnostic on whether the ALJ's reliance on those factors was erroneous. *Compare* Doc. 17 at 14 (citing, as basis to affirm benefits denial, ALJ's finding "that Dr. LaForrest documented improvement in Plaintiff's condition with medication and assigned GAF scores that were consistently in the moderate range."), *with* Doc. 19 at 2 ("Even if the ALJ erred in concluding

5

that the rise in Plaintiff's GAF score . . . reflected improvement in Plaintiff's mental functioning with treatment, and in comparing Dr. LaForrest's May 2011 and November 2012 assessments . . .").

## Discussion

"Under the EAJA, a court shall award to a prevailing party in a civil action against the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 498 (6th Cir. 2014) (internal quotation marks omitted).

### A. Substantial Justification for the Commissioner's Position

The Commissioner concedes Bass is a prevailing party, and she does not contend special circumstances preclude an award of fees. She argues only that her position opposing remand was substantially justified.

According to the Commissioner, her position was justified because, notwithstanding my ruling on the treating-source issue, she prevailed "with respect to every other issue raised by plaintiff, including the ALJ's assessment of [plaintiff's treating physician], the ALJ's compliance with SSR 96-8p, and the ALJ's credibility determination." (Doc. 25 at 4).

The Commissioner also contends my "only concern with the ALJ's decision was insufficient articulation" of her reasons for discounting Dr. LaForrest's opinion. (*Id.* at 5). Relying on *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723 (6th Cir. 2014), the Commissioner asserts the ALJ's "failure to provide an adequate explanation for his assessment of treating source opinions does not establish that a denial of benefits lacks substantial justification." (Doc. 25 at 5-6).

In response, Bass argues the Commissioner has minimized the nature, and number, of errors the ALJ committed. Far from being a case where the ALJ only failed to articulate good reasons for

6

discounting Dr. LaForrest's opinion, Bass contends this is a case where the ALJ "mischaracterized the record," ignored substantial evidence that was inconsistent with her RFC determination, and gave undue weight to his GAF scores. (Doc. 26 at 3).

As the Sixth Circuit has explained, "[t]he government's position is substantially justified if it is justified in substance or in the main that is, justified to a degree that could satisfy a reasonable person." *Glenn*, *supra*, 763 F.3d at 498.

Importantly, "[r]emand alone, which occurs when the ALJ's decision was not supported by substantial evidence, does not necessarily require an award of fees because the remand standard is not the equivalent of a finding that the government's position was not substantially justified." *Id.*

"The government's position . . . might be substantially justified despite remand, for example, where remand was based solely on the ALJ's 'failure to *explain* his findings adequately' and not on 'the weight he found appropriate for various medical opinions.'" *Id.* (quoting *DeLong*, 748 F.3d at 727) (emphasis in original). "On the other hand, where the government defends an ALJ decision that was reached by selectively considering the evidence, its position is not substantially justified." *Glenn*, *supra*, 763 F.3d at 498.

"The Government bears the burden of proving that a given position was substantially justified[.]" *DeLong*, *supra*, 748 F.3d at 725-26.

Here, the government has not shown its position opposing remand was substantially justified.

There is no merit whatsoever to the Commissioner's contention that, because she prevailed on three of the four claims Bass raised in his appeal, her overall litigation position was reasonable. That, in a word, is not how the EAJA works, nor how Congress intended it to work. As the court emphasized in *Glenn*, *supra*, 763 F.3d at 498, the substantially justified standard is not "a matter of

comparing the number of successful claims to unsuccessful claims in a single appeal." "Rather, the question is whether the government's litigating position *in opposing remand* is 'justified to a degree that could satisfy a reasonable person' and whether it was supported by law and fact." *Id.* at 498-99 (emphasis in original) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Opposing remand in this case, in the face of the ALJ's error-ridden RFC determination, was not substantially justified.

As Magistrate Judge McHargh noted, the ALJ made a "critical" error in giving undue weight to Bass's GAF scores. *Bass*, *supra*, 2015 WL 1299266, at *16.

Not only does the law discourage ALJs from according significant weight to GAF scores, given their limited utility, *e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("GAF scores . . . are not raw medical data and do not necessarily indicate improved symptoms or functioning"), but the record here also showed Bass's scores "over the course of treatment were mostly closer to 50 ('serious symptoms') than to 61 ('mild symptoms')," thus providing little, if any, factual support for the ALJ's decision. *Bass*, *supra*, 2015 WL 1299662, at *15; *see also Kennedy*, *supra*, 247 F. App'x at 766 (ALJ's finding that change in GAF score from 55 to 60 "reflects improvement in mental functions is not supported by substantial evidence").

The ALJ also violated her obligation to give "good reasons" for discounting a treating source's opinion when she failed to explain why Bass's supposedly "benign condition" was inconsistent with the moderate and marked limitations Dr. LaForrest had assigned.

In identifying that inconsistency, moreover, the ALJ ignored the substantial record evidence – namely Dr. LaForrest's records describing the symptoms Bass consistently reported over four years of treatment – supporting LaForrest's opinion. That was a clear violation of the ALJ's equally clear

8

duty to consider the record as a whole. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014).

Finally, the ALJ justified her decision to discount Dr. LaForrest's opinion (because it had not changed despite the existence of medical evidence allegedly warranting a change) with an apples-to-oranges comparison of the evidence.

As the Magistrate Judge explained, LaForrest's May, 2011, reports contained little discussion of Bass's "mental impairments" and "work-related mental limitations." *Bass*, *supra*, 2015 WL 1299266, at *17. But the doctor's November, 2012 Psychiatric Impairment Questionnaire "specifically discussed many work-related mental limitations." *Id.* In the absence of significant overlap in those reports, "comparing them does not strongly" – or at all, really – "indicate that the treating source's findings ought to have been doubted." *Id.*

In sum, the ALJ committed four clear and substantial errors in determining Bass's mental RFC. The ALJ: 1) gave undue weight to Bass's GAF scores; 2) failed to explain how Bass's condition was "relatively benign" in December, 2012, or how his condition was inconsistent with the mental limitations Dr. LaForrest assigned; 3) failed to consider the record as a whole – rather, she viewed the evidence selectively – in concluding Bass's condition in late 2012 was inconsistent with LaForrest's opinions; and 4) mischaracterized the evidence in finding Dr. LaForrest's opinions should have changed between May, 2011, and November, 2012.

After the Magistrate Judge exposed these glaring errors, moreover, the Commissioner persisted in opposing remand. But her basis for doing so – the inconsistency between Bass's supposedly "benign" condition in late 2012 and the moderate limitations Dr. LaForrest had assigned – was as unjustified as the ALJ's original decision on that point. Indeed, the Commissioner, like the

9

ALJ before her, failed to consider the record as whole, and instead "homed in on a single piece of evidence" in an effort to avoid a remand. *Bass*, *supra*, 2015 WL 1299266, at *4.

These flaws were not, as the Commissioner would have it, mere "failure[s] to explain [the ALJ's] findings adequately." *DeLong*, *supra*, 748 F.3d at 727. Rather, they affected the weight the ALJ gave to Dr. LaForrest's opinion, and thus went "to the heart of [Bass's] disability claim." *Glenn*, *supra*, 763 F.3d at 500.

For all these reasons, I conclude the Commissioner's litigation position was not substantially justified.

### B. Counsel's Hourly Rate

Bass's counsel has requested that I compensate him at a rate of $187.04 per hour, which exceeds the statutory cap of $125 per hour. I may do so provided I find "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 n.4 (2002).

In support, counsel has introduced evidence from the Consumer Price Index for the Midwest urban region showing the cost of living has increased from 151.70 in March, 1996 (when the $125 cap took effect) to 226.997 in July, 2014. Counsel also shows that the cost for his firm to litigate a case has increased roughly seventy-five percent since 1996.

The fee counsel requests represents an approximately fifty-percent increase based on the Consumer Price Index.

I agree with counsel that, for the reasons just given, a fee of $187.04 per hour is reasonable. Moreover, as I have previously pointed out, "those attorneys who routinely handle social security appeals – including capable counsel in this case – are *de facto* specialists." *Draper v. Comm'r of*

10

*Soc. Sec.*, 980 F. Supp. 2d 841, 843 (N.D. Ohio 2013). Like other specialists, "they should be compensated fairly and reasonably for their success," *id.* at 844, and counsel's skills further support an above-cap fee.

## Conclusion

It is, therefore

ORDERED THAT

1. Plaintiff's motion for attorney's fees (Doc. 23) be, and the same hereby is, granted.

2. Plaintiff's counsel shall submit a final order stating the amount due and owing, which shall include compensation for the hours expended, at the requested hourly rate, litigating his application for fees and costs.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge